Roy G. Fitzgerald v. Commissioner.
Roy G. Fitzgerald v. Commissioner
Docket No. 4451.
United States Tax Court
1945 Tax Ct. Memo LEXIS 151; 4 T.C.M. (CCH) 663; T.C.M. (RIA) 45228; June 22, 1945
*151 Joseph W. Sharts, Esq., 905 Commercial Bldg., Dayton 2, O., for the petitioner. Cecil H. Haas, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: Respondent has determined a deficiency in income tax of the petitioner for the calendar year 1941 in the sum of $2,143.45. The only submitted issue is whether petitioner is entitled to a deduction of $4,452.72, in the computation of his income tax for 1941 as an indebtedness which became worthless during that year. This indebtedness consisted of moneys petitioner advanced to his daughter and son-in-law during the years 1933 to 1936, inclusive. It is contended by petitioner that these advances were made as loans whith the expectation of repayment and that the indebtedness became worthless in the taxable year. Findings of Fact Petitioner is a resident of Dayton, Ohio, and a lawyer by occupation. He filed his individual income tax return for the year 1941 with the collector of internal revenue for the first district of Ohio at Cincinnati. In computing his taxable income on this return he deducted $4,452.72 as a debt which became worthless in that year. The debt consisted of money advanced *152 to his daughter, Ruth F. Hume, and her husband, Thomas L. Hume, Jr. Its amount is based upon a statement furnished the petitioner by his son-in-law, setting out the various advances and computing a total of $4,452.72. The correct total of the items listed is $4,352.72. Thomas L. Hume, Jr., married petitioner's daughter in 1923. The couple has 3 children and in 1941 lived in their own home in Washington, D.C., which they had purchased in 1925. Thomas L. Hume, Jr., has been, for many years, employed as a salesman of investment securities on a commission basis and in 1941 was so employed by his father, a securities dealer in Washington, D.C.
During the period 1933 to 1936, Thomas L. Hume, Jr., was in straitened financial condition due to the depression and lack of activity on the security market. During this period, at his and his wife's request, the petitioner advanced them various sums of money totaling $4,352.72. Of this total, $884.13 was evidenced by promissory notes, all of which were signed by Hume and his wife except one signed by Hume alone. The notes carried interest after maturity. The other items were advanced upon request by Hume and his wife but no note was requested *153 or given. These advances by petitioner were for the purpose of supplying the funds with which Hume paid premiums upon his insurance policies, interest and principal on the loan on his home, as well as general living expenses and doctors' bills. Of the total, $700 was advanced for the purpose of defraying the expenses of Hume in moving his family to New York to accept a position there with a security house. Petitioner at various times wrote his daughter and son-in-law inquiring as to their financial condition and asking for repayment, but during the years following 1936 the income of the son-in-law was not more than the actual amount needed to pay the normal expenses of maintaining his family and no repayment was made. Thomas L. Hume, Jr., and his wife, in 1941, were occupying their home at 3114 45th Street. N.W., Washington, D.C. The title to this property stood in both of their names. It had been purchased in March 1925 for $12,500. It is located in Wesley Heights, one of the best residential sections of Washington. Subsequent to its purchase there had been many public improvements, tending to increase the value of property at that location. After its purchase, the Humes built *154 a garage and added a maid's room to the house. In 1941 the property was worth not less than $12,000. At that time it was encumbered with a first mortgage of $5,489.15 and a second mortgage of $550. In that year Hume was indebted for a bank loan of $500. In 1941 petitioner communicated with Hume and advised him that it was his intention to claim a deduction on his income tax return for that year in the total amount of his above-mentioned advances. In response Hume prepared a statement from his records of the various advancements, expressed regret at his inability to pay and assured petitioner that he would do anything that he could to aid him in securing the allowance of the deduction. Sometime prior to the close of the year 1941, petitioner wrote a Washington attorney who was a close friend of his and a friend of Hume, asking him to look into the matter and collect from Hume the indebtedness or advise him as to the possibility of collection. The attorney, after talking with Hume, advised petitioner orally against filing suit and stated that, in his opinion, a judgment would not be collectible. This opinion he confirmed later in the following year by letter. The amounts advanced *155 by petitioner to his son-in-law and daughter in a total of $4,352.72 represented an indebtedness on their part to him. The advances were made with the expectation of repayment. No part of this indebtedness became worthless in the year 1941. Opinion Respondent makes two contentions, first, that the advances by petitioner to his son-in-law and daughter were gifts and not loans in that none of them was made with the expectation of repayment, and, second, that if they were loans, the indebtedness did not become worthless to any extent in 1941 and in fact was not uncollectible in that year. We think the evidence clearly establishes the fact that the advances in question were made with the expectation of repayment and we have so found. However, we think it equally clear that respondent must be sustained upon his second contention. The conclusion is inescapable that the question of the possibility of collection of the indebtedness was determined without consideration of the equity owned by the son-in-law and daughter in their Washington home. It is true that it was the only property they possessed from which collection of the indebtedness could have been made. We can not but feel, however, *156 that petitioner was unwilling to take steps for collection because the result would have been to strip his daughter and his grandchildren of the home in which they lived. Considering all of the conditions revealed, we do not attach great weight to the so-called employment of a Washington attorney to enforce collection, and the opinion rendered by him. He was a friend of all the parties and his connection with the matter was at the time when petitioner was attempting to perfect his claim for the deduction of the indebtedness on his income tax return. In any event, the facts established show that the opinion expressed by the attorney was not justified in view of the existence of an equity in the Hume home in excess of the total amount of the indebtedness owed to petitioner by the Humes plus other indebtedness of the husband. Section 23 (k) of the Internal Revenue Code provides for the deduction of "Debts which become worthless within the taxable year; * * *". This language was substituted in by section 124 (a) of the Revenue Act of 1942 for the language in the former acts permitting the deduction of "Debts ascertained to be worthless and charged off within the *157 taxable year". This amendment is made retroactive, by section 124 (d) of the Revenue Act of 1942, to taxable years beginning after December 31, 1938 and has been given retroactive application. Cittadini v. Commissioner, 139 Fed. (2d) 29. There is absolutely no showing that the condition with respect to possibility of collection changed in any way between 1938, 1939, 1940 or 1941, and aside from all other questions there is no basis for a conclusion that the indebtedness became worthless in 1941. On this ground alone petitioner would necessarily be denied the deduction. We think, moreover, that the facts clearly show that in 1941 the indebtedness was not worthless but, on the other hand, was in all probability collectible in full, if petitioner had been willing to take legal steps to enforce his collection by sale of the Hume home. Decision will be entered for the respondent.